GASKINS, J.
I;Safeway Insurance Company (“Safeway”) appeals from a trial court judgment finding that the company’s insurance policy provided coverage for Timothy Peaker when he drove a rented car into the plaintiffs, Jennifer Partain; her minor child, Luke Wesley Partain; Heather Case; and her minor child, Gavon McCoy. For the following reasons, we reverse the trial court judgment.
FACTS
The accident at issue here occurred on April 14, 2006, on the parking lot of Wal Mart in Minden, Louisiana. Peaker was driving a 2005 Mazda that had been rented by Sarah Yocum from Enterprise (“Enterprise”), a car rental company, on April 12, 2006. Peaker was not designated as an additional driver on the rental car agreement. Peaker drove the vehicle into the plaintiffs, who were walking on the lot.
On November 22, 2006, the plaintiffs filed suit for their damages against Peak-er; his insurer, Safeway; Louisiana Farm Bureau Mutual Insurance Company (“Farm Bureau”), the uninsured/underin-sured (“UM”) insurer of Partain; and Allstate Insurance Company, the UM insurer of Case.
On July 3, 2008, Safeway filed a motion for summary judgment, citing the provision in Peaker’s policy which specified that coverage for a non-owned vehicle was provided to the named insured “provided the non-owned automobile is being used by the named insured with the permission of its owner.” Safeway claimed that Yocum was the only authorized driver |2of the rental car and that Peaker did not have express or implied permission from Enterprise to drive the car. Therefore, Safeway did not provide coverage under its policy for this accident. It does not appear that the motion was ruled upon.
Trial on the matter was held on April 18, 2011. On June 1, 2011, the trial court signed and filed a judgment finding Peak-er to be 100 percent at fault in causing the accident. Damage awards were made to all the plaintiffs. The trial court also apparently found that the Safeway policy provided coverage to Peaker. The trial court stated that the damage awards were subject to the $20,000 policy limit of the Safeway policy. The plaintiffs’ demands against Peaker were dismissed.
Safeway appealed the trial court judgment, claiming that the trial court erred in finding that its policy provided coverage to *1162 Peaker in this case. The trial court clerk’s office notified Safeway that the recording device used at the hearing had malfunctioned and there was no recording of the trial. Therefore, no transcript could be produced. Also, the judge’s oral reasons for judgment were not available.
Due to the lack of a transcript, Safeway filed in this court a motion to remand for new trial in order to take the testimony of Peaker and Dean Jagot, the Enterprise employee who rented the ear to Yocum. The motion to remand for new trial was denied by this court, noting that the lack of a transcript could be corrected by a joint stipulation under La. C.C.P. art. |s2132 and the filing of written reasons by the trial court.[1] The parties were given 20 days to enter a joint stipulation.
In their joint stipulation, the parties agreed that Peaker was 100 percent at fault; that claims against Peaker were dismissed to the extent that he was not insured; that the Safeway policy filed in connection with the motion for summary judgment was adopted by reference and introduced into evidence; that the plaintiffs will not appeal the amount of damages; that the issues on appeal will be limited to insurance coverage, and specifically, whether the trial court correctly held that Safeway’s policy insured Peaker while operating the rental vehicle at the time of the accident.
The parties stipulated the testimony of Jagot, the branch manager of Enterprise where the vehicle was rented, and the testimony of Peaker. Jagot testified that he was employed by Enterprise as a branch rental manager and had access to the records dealing with the lease of the rental car involved in this case. He was personally familiar with the terms and conditions of the lease agreement between Enterprise and Yocum. On April 12, 2006, Jagot leased a 2005 Mazda to Yocum, who lived in Princeton, Louisiana.
|4Enterprise sent a “car prep” to Yo-cum’s residence to pick her up and bring her to the Enterprise office to fill out and sign the rental agreement. Yocum came in, filled out and signed the lease agreement. Jagot identified a copy of the lease agreement which was signed by Jagot and Yocum. Yocum paid in cash. Jagot did not remember Peaker being present. Ja-got specifically asked Yocum if there would be any other drivers and she said there would be none. If Yocum had identified Peaker as an additional driver, and if he had a valid driver’s license, he would have been listed on the rental agreement as an additional driver. If Peaker did not have a valid driver’s license, he could not have been listed as an additional driver.
Jagot walked out to the car with Yocum, did a walk-around inspection, and gave her instructions. Jagot never authorized Peaker’s use of the vehicle and was not aware that Peaker would be a driver. Yo-cum was the only authorized driver of the vehicle. Jagot did not authorize Peaker to drive or operate the leased vehicle. Peak-er did not have permission of Enterprise *1163 to operate the car on April 14, 2006. Peaker was not an authorized driver of the vehicle under the lease agreement executed on April 12, 2006.
Peaker stated that on April 14, 2006, Enterprise sent an employee to the house he shared with Yocum.[2] He could not remember who called Enterprise. According to Peaker, both he and Yocum talked to the Enterprise employee at their home. The Enterprise employee drove them to lathe Enterprise office in Bossier. Yocum filled out and signed the lease agreement at Enterprise. Peaker believed they did it that way because his driver’s license was not valid. Peaker said that he talked to the Enterprise representative and answered questions asked him by the representative. Peaker claimed that he used his money to pay for the rental. He asserted that he and Yocum used his Safeway insurance policy to rent the vehicle. Peaker stated that no one from Enterprise ever told him that he could not drive the vehicle and he thought he could drive the vehicle. Peaker acknowledged that no one from Enterprise instructed him on operating the vehicle and that Yocum drove the vehicle away from Enterprise. Peaker urged that the actions of the Enterprise representative implied to him that he could drive the car. He only drove the car one time and that was on the date of the accident. Peaker said that Yocum asked him to drive the car because she was too tired to drive. Peaker did not think that he should be driving because he did not have a valid driver’s license, but he thought he had permission to drive the vehicle.
The trial court filed its written reasons for judgment, basically reiterating the written judgment finding that the Safeway policy provided coverage for this accident. Safeway proceeded with its appeal.
INSURANCE COVERAGE
Safeway asserts that the trial court erred in finding that the Safeway policy provided coverage for Peaker under the facts present here. This argument has merit.
| ^Discussion
In Siverd v. Permanent General Insurance Company, 2005-0973 (La.2/22/06), 922 So.2d 497, the Louisiana Supreme Court stated the following concerning the review of fact:
A court of appeal should not set aside the factual findings of a trial court absent manifest error or unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, if a court of appeal finds that the trial court committed a reversible error of law or manifest error of fact, the court of appeal must ascertain the facts de novo from the record and render a judgment on the merits. LeBlanc v. Stevenson, 00-0157 (La.10/17/00), 770 So.2d 766. Although appellate courts should accord deference to the factfinder, they nonetheless have a constitutional duty to review facts. Ambrose v. New Orleans Police Dep’t Ambulance Serv., 93-3099, p. 8 (La.7/5/94), 639 So.2d 216, 221. Because appellate courts must perform this constitutional function, they have every right to determine whether the trial court verdict was clearly wrong based on the evidence or clearly without evi-dentiary support. Ambrose at p. 8-9, 639 So.2d at 221. The reviewing court must do more than simply review the record for some evidence which supports *1164 or controverts the trial court’s findings; it must instead review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Stobart v. State of Louisiana, through Dep’t of Transp. & Dev., 617 So.2d 880, 882 (La.1993). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was reasonable. Sto-bart, 617 So.2d at 882. We have previously emphasized the principle that “if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Stobart, 617 So.2d at 882-83 (citing Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990))).
The jurisprudence is clear that, when a party rents a vehicle and fails to designate any additional drivers in the rental car agreement, the rental car agency that owns the vehicle has not conferred express permission on any |7person other than the lessee to drive the vehicle. Therefore, insurance policy provisions like the one’ contained in Peaker’s contract of insurance with Safeway do not provide coverage for the nonpermissive use of a non-owned vehicle. See Simms v. Butler, 1997-0416 (La.12/2/97), 702 So.2d 686; Weston v. Hollis, 26,380 (La.App.2d Cir.12/7/94), 647 So.2d 459; Gonzales v. Progressive Specialty Insurance Company, 99-0792 (La.App. 4th Cir.5/5/99), 732 So.2d 1268.
The issue of implied permission by a rental car agency to use a rental vehicle was considered in Sauer v. National Car Rental System, Inc., 07-844 (La.App. 5th Cir.4/15/08), 980 So.2d 898, writ denied, 2008-1235 (La.9/19/08), 992 So.2d 935. In that case, Ms. Heflin and her sister, Ms. Hutchins, traveled together to New Orleans by plane and went to National Car Rental to rent a car. Ms. Hutchins rented the car while Ms. Heflin retrieved their bags. Ms. Hutchins did not list Ms. Heflin as an authorized driver on the rental car agreement. However, Ms. Heflin believed that she was an authorized driver because, when the pair traveled together, their practice was for Ms. Hutchins to pay for the rental car and include Ms. Heflin as an additional driver. The car rental agent walked the ladies to the car and Ms. Heflin got into the driver’s seat. The agent gave Ms. Heflin instructions on the operation of the vehicle and Ms. Heflin drove the car off the lot. Ms. Heflin was involved in an accident while driving the rental car. A lawsuit was filed against numerous parties.
Ms. Heflin’s insurer, Allstate, sought to avoid liability by arguing that, because Ms. Heflin was not listed as an additional driver in the car |srental agreement, she did not have the permission of National to drive the car, and therefore, no coverage was provided under the Allstate policy. The plaintiffs argued that Ms. Heflin had the implied permission of National to drive the car and that the Allstate policy did provide coverage. The appellate court found that the actions of the rental car agent in walking the ladies to the car, giving Ms. Heflin instructions in the operation of the car, and watching as she drove the vehicle off the lot, gave reason for Ms. Heflin’s belief that she was an additional driver under the rental agreement. These actions showed a sufficient acquiescence in, or lack of objection to the use of the vehicle by Ms. Heflin. Therefore, because Ms. Heflin had implied permission of National to use the vehicle, the Allstate policy provided coverage. See also Armstrong v. *1165 Thrifty Car Rental, 2005-1461 (La.App. 3d Cir.6/7/06), 933 So.2d 235.
In this case, the record does not support the trial court’s finding that Peak-er had the express or implied permission of Enterprise to operate the rented vehicle. Jagot testified that he sent a car to pick up Yocum and bring her to the car rental agency where she alone signed the rental agreement and she paid for the rental in cash. Jagot did not remember Peaker being present during the transaction. Jagot specifically asked Yocum if there would be additional drivers of the vehicle and she said that there would be none. No additional drivers were listed on the rental agreement. Jagot went out to the vehicle with Yocum and gave her instructions regarding the vehicle. Jagot did not authorize Peaker to drive the vehicle.
| ¡¡Peaker claims that he accompanied Yo-cum to Enterprise where she filled out the rental car agreement. Peaker acknowledged that Yocum rented the car because Peaker did not have a valid driver’s license. Peaker stated that he paid for the rental, but nothing on the rental agreement corroborates this claim. Peaker asserted that he used his insurance policy with Safeway to rent the vehicle. However, that portion of the rental agreement entered into evidence in this case makes no mention of Safeway and does not corroborate this statement by Peaker. Further, Peaker urged that he talked to the Enterprise representative and answered questions asked him by the representative. There is no showing what these questions were. No one from Enterprise instructed Peaker in the operation of the vehicle. Yocum drove the vehicle away from Enterprise, not Peaker. Peaker gave a conflicting statement by saying that when Yocum asked him to drive the car, he did not think he should be driving because he lacked a valid driver’s license, but that he thought he had permission to drive the vehicle.
Because Peaker was not listed as an additional driver on the policy, it is clear that he did not have the express permission of Enterprise to use the vehicle. The record also does not support the finding that Peaker had implied permission to drive the vehicle. There is a serious question as to whether he was even present when the vehicle was rented. There is no evidence, other than his self-serving testimony, that he paid rental charges. The documentary evidence does not show that his insurance with Safeway was used to rent the vehicle. Peaker admits that he was not instructed in the operation of the vehicle and he did not drive the vehicle away from | inEnterprise. None of the facts found in Sauer, dealing with implied permission by a car rental agency to use a rented vehicle, are present in this case.
It is unfortunate that Peaker caused an accident resulting in injury to four people under circumstances precluding coverage by his insurance policy with Safeway. However, Peaker clearly used this vehicle without the express or implied permission of the owner, Enterprise. Under the terms of the Safeway insurance policy, there is no insurance coverage to Peaker for this accident.
MOTION TO DISMISS
In the trial court, the plaintiffs settled their claims with their UM insurance carriers, Farm Bureau and Allstate Insurance Company. A satisfaction of judgment is contained in the record between Case, her child, and Allstate. Farm Bureau asserts that it settled with Partain and her child on April 6, 2011, prior to trial. A joint motion and order to dismiss by Farm Bureau and Partain and her child was filed in the trial court on June 9, 2011. *1166 However, because Safeway appealed the judgment on June 8, 2011, the trial court directed that the motion be filed with this court. The motion was denied by this court due to lack of jurisdiction to render a dismissal against a party not before the court on appeal. This court stated that the disposition of the claim against Farm Bureau may be raised by the parties on appeal. Farm Bureau has filed a brief in this case arguing that the joint motion and order to dismiss should be granted.
|nWe conclude that the joint motion and order for dismissal was properly filed in the trial court and should be dealt with by that court. La. C.C.P. art. 1671 provides:
A judgment dismissing an action without prejudice shall be rendered upon application of the plaintiff and upon his payment of all costs, if the application is made prior to any appearance of record by the defendant. If the application is made after such appearance, the court may refuse to grant the judgment of dismissal except with prejudice.
La. C.C.P. art. 2088 provides in pertinent part:
The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, [.]
This article contains a list of specific actions over which a trial court retains jurisdiction in a case after the filing of an order of appeal. The list of circumstances enumerated in La. C.C.P. art. 2088 over which the trial court retains jurisdiction is not intended to be exclusive. Under the express provisions of the article, the trial court is not considered divested of jurisdiction to consider any issue that is “not reviewable under the appeal.” This language “not reviewable under the appeal” has generally been interpreted to give the trial court continuing jurisdiction over all issues that are unaffected by the appeal, even if the issue is not specifically listed in La. C.C.P. art. 2088. State Through Department of Social Services on Behalf of Harden v. Southern Baptist Hospital, 94-2228 (La.App. 4th Cir.10/12/95), 663 So.2d 443, writ denied, 95-2751 (La.1/26/96), 666 So.2d 676.
hJn this matter, the trial court judgment made no mention of Farm Bureau. No issues regarding Farm Bureau are before this court for review. Farm Bureau is not a party to this appeal. This court continues to lack jurisdiction to render a dismissal against a party not before the court on appeal. Because the issues regarding Ms. Partain and Farm Bureau are not reviewable on appeal, the trial court retained jurisdiction to act on the joint motion and order to dismiss. We direct Ms. Partain and Farm Bureau to refile the joint motion and order to dismiss in the trial court and the trial court is instructed to act upon it.
CONCLUSION
For the reasons stated above, we reverse the trial court judgment against Safeway and find that the Safeway provides no insurance coverage in this case. Costs in this court are assessed to the plaintiffs, Jennifer Partain, individually and on behalf of her minor child, Luke Wesley Partain, and Heather Case, individually and on behalf of her minor child, Gavon McCoy.
REVERSED.

. La. C.C.P. art. 2161 provides in pertinent part:
An appeal shall not be dismissed because the trial record is missing, incomplete or in error no matter who is responsible, and the court may remand the case either for retrial or for correction of the recordf.]
La. C.C.P. art. 2132 provides:
A record on appeal which is incorrect or contains misstatements, irregularities or in-formalities, or which omits a material part of the trial record, may be corrected even after the record is transmitted to the appellate court, by the parties by stipulation, by the trial court or by the order of the appellate court. All other questions as to the content and form of the record shall be presented to the appellate court.

. The stipulation as to Peaker’s testimony lists the date of the rental agreement as April 14, 2006, not April 12, 2006. The lease agreement shows that it was actually executed on April 12, 2006.